There are three issues that independently warrant the granting of a new trial. The first was the seating of a biased juror. I was curious on that issue. No one talked about the Avis Rent-A-Car case. The second issue was the seating of a biased juror. I was curious on that issue. No one talked about the Avis Rent-A-Car case. I was curious on that issue. The third issue was the seating of a biased juror. I was curious on that issue. No one talked about the Avis Rent-A-Car case. I was curious on that issue. The third issue was the seating of a biased juror. I was curious on that issue. No one talked about the Avis Rent-A-Car case. I was curious on that issue. In and of itself, it doesn't. It isn't until you get to the fact that her son and friends were the victims of racial profiling, which was the theory that was the bulwark of the plaintiff's case. And didn't she say to the judge when questioned, I can be unbiased, I can be neutral? She ultimately said that. And in reviewing the judge's conclusion that she could, will we review that for abuse of discretion? I believe you do. So why did the judge abuse her discretion sitting there looking at the juror who was saying she could be unbiased and concluding that she was telling the truth? There are many times you hear jurors after being repeatedly asked similar questions like this who ultimately say, yes, I can be fair after they're put on the spot in front of a group, a large group of strangers. Sometimes the judges buy it, sometimes they don't. This judge, Judge Pearsall, is that who it was? Yes. This judge looked her in the eye and concluded she could put it aside. You get that a lot with jurors that just don't want to sit. They say, well, I know somebody involved in this case. I know the doctor who's going to testify or something. And they're asked a couple of times whether this might affect them and they shilly-shally. And then finally they give their assurance they'll be fair. So goodbye challenge for cause. Hello. Peremptory challenge. Happens all the time. Only you can't do the peremptory challenge if it looks racial. I understand that, Your Honors. And yes, that's precisely what happened here. But when you get to the second component, the peremptory challenge, we cited the Feltner Supreme Court decision and 11 other cases which held that the exercise of a peremptory challenge with a juror who gave similar answers to Juror 18 was appropriate under the circumstances. Now it gets to Judge Silverman's question or Judge Kleinfeld's. I forget. Why were you harmed by seating of a juror who we can now assume the judge did not err in refusing to excuse it for cause? If the issues were entirely unrelated to those questions that she indicated concerns about, I would understand that the error could be harmed. But here, this is a disputed factual case. The issue does involve racial profiling. I don't know how the seating of a juror who's indicated that she's had a lawsuit, at least against the bus company, that did involve police officers. Well, wait a minute. Al, I was thinking what could that be since she didn't say. And the most likely thing that occurred to me is some guy driving a car runs into the bus, and they call the police, the police come, and they maybe give the guy that ran the red light a ticket for running a red light and hitting the bus. Of course the police would be involved. Anytime there's an accident with a bus, I don't know what it was because nobody asked her. I don't know if that's what happened or something else happened. But I don't see why I can infer that she would have hostility to police on account of the suit against the bus company. Let me suggest, because I think, at least for my purposes, I understand your argument on this point. I'm interested in other parts of your case. Could I ask you a question? Let me ask you to assume that I find that there's insufficient evidence to support the 1985 counts in this complaint. As I see the jury verdict, the jury actually specified its damages, hospital bills, bail, fees, et cetera. If the 1985 counts fail and the other ones remain, don't the damages remain the same? Yes. So it would be possible for us in this case, I know this is not the result you seek, to say that we find insufficient evidence to support the racial animist allegations in 1985, but that if the other counts remain for purposes of discussion, then the damages would be the same. That would be my assessment based on… That was mine also, but I wanted to see if you agreed with it. Let me ask you one. You contend that the verdicts were inconsistent, is that right? Yes. In what way were they inconsistent? Well, first, if you look at question one, it said that the deputies did not deprive the plaintiff of any of his free speech rights under the First Amendment. Yeah, you're correct except by adding the word any, but go ahead. So tell me, which one does that conflict with? Then if you look at question 12, it says they found that the deputies did violate this First Amendment. Question 12 said that either the defendants interfere or attempt to interfere with his First Amendment right to challenge their conduct. This one said that they violate his right, deprive him of his rights of free speech. I guess to me they ask different questions, don't they? Not to me. Well, assuming you can reconcile them, assuming we, since it uses different language in it, if we can reconcile them, if we can, what else have you got? All right. If you tell the jury that, or the jury finds that there was no unreasonable seizure and the plaintiff was not falsely arrested. Which one are you referring to now? Questions two and eight. Two and eight? Okay. Yet the jury also found that the deputies conspired to assault and falsely imprison the plaintiff. Well, under California law, false imprisonment and false arrest are one and the same. They're the same tort. You say two and eight? Yes, two and eight. There's no liability on two and no liability on eight. Correct. Okay. So those are not inconsistent, are they? No. Two and eight, when you compare it to 12. To 12. That's the First Amendment? I'm sorry. Ten. Question ten. Well, how are those inconsistent? One deals with false arrest. Another one deals with assault. No, it says assault and falsely imprisoned. You can't falsely imprison someone if you've also found that he wasn't falsely arrested, because in California they're the same tort. Let me ask a broader question. Our case law is, I think, crystal clear that when you have general verdicts as opposed to special interlocutories, and these are general verdicts on each count, inconsistency does not throw out the inconsistent verdict. How do you get around that case law? Well, if you look at the Guy v. City of San Diego case and the Pierce case. Special verdicts. No, they're no different. If you look at the way that those verdicts are couched, they're no different than the language that was used in this case. I thought that our case law was quite clear that when one asks for just is somebody liable on count one, is somebody liable on count two, is somebody liable on count three, that those are general verdicts and not special interrogatories. Well, in the Guy case, the question was asked, whether the defendants violated plaintiff's Fourth Amendment right to be free from excessive force. That's virtually couched in the same kind of language that our verdict was. Okay. So what's the consequence of inconsistency? What if we, that's why I asked you the initial question, what if we throw out every claim that you claim was inconsistent with another? Aren't we still left with the excessive force verdicts? Yes. And the damages remain? No, the damages are different. Why? Because virtually all of the damages relate to the malicious prosecution claim. Can't you have malicious prosecution even if you don't have false arrest? No. Why? I'm not sure of that. It seems to me that even on the false imprisonment, that there's a problem with the logic of your argument because time continues. The jury might well have thought, well, if the person won't give the policeman license and registration, then the policeman is supposed to arrest him. That's fine. But he's not supposed to continue the imprisonment on a lot of trumped-up lies in a police report and get the person all tied up with criminal charges beyond not giving the policeman the license and registration. So that was the false imprisonment that came later in the course of events. To put it differently, the jury doesn't fault your clients for arresting Mr. Perrin for whatever traffic violation occurred, but they do fault them for charging him with assault and having him imprisoned and prosecuted for assault. Isn't that all consistent with this verdict? Again, Your Honor, everything stems, the arrest and the subsequent imprisonment, all stem from the failure to provide license and registration. And maybe the jury says, that's fine. You can stop him and you can even take him in for the failure to provide license and registration, but you can't beat him up for it and that we conclude that you used excessive force here And then you charge the guy in order to cover yourself with assaulting you for which he was prosecuted. And that's so the jury could have concluded, as Judge Kleinfeld says, that it was okay to stop him. It was even okay to bring him in for failure to provide his license, but it wasn't okay to beat him up and it wasn't okay then to charge him with assaulting police officers. What's wrong? Why isn't that perfectly consistent with the verdicts? Well, one, the jury was never instructed that that's a basis upon which they could make that kind of finding. Were they instructed that they couldn't? We're supposed to fall all over ourselves to uphold jury verdicts. That's a kind of colloquial way of putting what the law is on sustaining jury verdicts. And was the jury told it couldn't think that way? No. Let me ask you about something I just don't get in this case. I'm sure all of us have been stopped by policemen. And I'm sure all of us have asked the question, it takes a little time to get your license and registration out if you have all kinds of papers clumped up in your glove compartment. And I would guess a whole lot of us have asked, in the course of digging out our license and our registration from all the junk in the glove compartment, what did I do wrong or what did I do or how come you're stopping me? What I couldn't figure out here was why the cop wouldn't tell him. The officer said he did tell him. I think the officer did not say that he did tell him. I think the officer, you better point me to that because when I looked for the answer to that question, I missed it. As I read the record, the officer eventually said once you give me your license, I'll tell you. Isn't that what he said? I know that was what the plaintiff said, the officer said. Well, the jury's entitled to think that everything that both cops said was a lie. And we're supposed to take the evidence in the way that would sustain the verdict. So we can't just accept an uncontradicted statement in the officer's testimony. We're required to say what if the cops believed everything Perrin said and didn't believe a word that these two policemen said? What then? Why wouldn't the policeman tell him? Even if you ignore everything the officer said, Mr. Martin indicated that one of the first things that Mr. Perrin said when he got out of his vehicle was, I know you didn't stop me for speeding. So why did the policeman ever tell him why he stopped him? He did. If you look at page 1085. 1085, okay. At lines 15 and 16, the officer says, I believe I told him I stopped him for speeding. Okay, so you're done. Thanks. Just a few seconds left. So why don't we turn it over to the appellee at this point. Thank you. Good morning. Good morning, Your Honor. Excuse me for one moment. Let me address the last one. Let me get your name for the record. Oh, I'm sorry, Your Honor. Stephen B. Stevens for the appellee. Thank you, Mr. McPerrin. My trial counsel, Mr. Beck, is at counsel table as well. Thank you. In case I get really stumped on a case. All right. Could you help me with something? Sure. Your adversary has not read Alaska Rent-a-Car v. Avis Budget Group. Do you happen to have read it? No. I really want to say that I read it at some point in my career, but I can't remember. Well, it wouldn't be long ago in your career because it came out in June. Is that a case I can absolutely assure you that I have not read it? What we held in that case was that Rivera v. Illinois, the Supreme Court decision, overruled our Ninth Circuit decision in the United States v. Anagoni, that denial of a peremptory challenge required reversal. And we said that we apply standard of review applicable to decide whether the error affected substantial rights, and we looked to see whether there was harmless error because we held that there could be such a thing as harmless error. And then we got to the nub of what's problematic for you. We said there wasn't, but we said the case involved nothing bearing on race or ethnicity. And we also said that counsel waived an opportunity to challenge some other jurors who had similar problems. The verdict was unanimous. You could either extend Avis-Renicar v. Avis to apply to this case, or you could limit Alaska-Renicar v. Avis so that it doesn't apply to this case. And I'm troubled because in Alaska-Renicar v. Avis, there was nothing about race or ethnicity, and in this case, there is. So why not limit Alaska-Renicar v. Avis? Okay. Let me answer the question. It might be a lengthy answer because you pose an interesting problem. I have not read the case. I was a counselor, and neither, and maybe a letter brief addressing that would be appropriate rather than me speaking up. Well, if this was your chance, I assume you'd shepherdize. Well, I confess I missed it. So let's break down Judge Klinefeld's question for you. First question is did the judge err in denying the challenge for cause? If she did, I mean, the judge did, Judge Pearsall did, we'd never get to the second question. I don't think he did at all. Okay. Now the record, now they attempt to exercise a peremptory challenge, and the question is did the judge err in not letting them under Batson exercise that challenge? Well, I think that the plaintiff here established the elements of the Batson challenge. Tell me what they were. First, the rest of it. Because we have to do that before we get to the next question that Judge Klinefeld posed, which is if there was error, was it harmless? Okay. Well, the Batson challenge is, first, a premature showing that the peremptory challenge has been exercised on the basis of race. How many racial challenges were made? How many challenges to African-American jurors were made? There were two plus one, and the plus one is it was a Hispanic gentleman who appeared black, although he self-identifies as Hispanic apparently. And the judge noted that, I think. The judge noted that in the record, yes. So he thought that met the first step of Batson, which requires relatively little. Right. It's a low threshold. And the prosecutor says, no, that's not why I'm challenging her. It offers a race-neutral context. I'm sorry. People representing the State say that. This often happens in criminal cases. And then the judge then has to move to the third step, which is the, was this pretextual, or do I believe that's the reason? Yes. And what are the reasons Judge Pearsall gives for that? Judge Pearsall was troubled by the fact that this juror 18's supposed biases, or whatever the reasons might be for the feeling that she ought to be challenged, didn't seem to match up with other jurors that the defendants let go. Other people who had experiences with the police from time to time that they left on. Right. I think there were four or maybe five, I have to check my brief, but there were at least four or five jurors that had direct unpleasant experiences with the police that were not black, and the defendants were fine to leave them on the jury. What kind of unpleasant experience? I think stops and. Did it involve profiling? I don't think it did because they were not my knowledge. Well, this case is different because this lady says that her relatives, her son, and friends had been profiled. Well, she said her son and friends. I interpret that to mean the son's friends, but he didn't understand why they, you're entitled to kick somebody off the jury for no good reason, why that might be somebody you wouldn't want to have. Well, she said that she had never personally experienced racial profiling. I understand that, but that's not my question. You can throw people off for cause. She doesn't meet the cause. But then you get to kick people off for really any reason but a bad one, and this lady says she's had people who she has friends and a son, friends of the son, who've had bad experiences similar to this. If you're entitled to a freebie, isn't this someone you'd want to get off? Well, not if it's racially motivated. Right. If it's not racially motivated. You take the race part out of it. Can you understand why they would want somebody out of this? I could indeed, and that's why I was surprised that they didn't object to the other people who were. But the other people didn't have profiling problems. But they had unpleasant experiences. Well, unpleasant experiences and profiling are two different things. I agree, but let me just add one point here. At one point, the defense also acknowledged that profiling does occur in our society. So? Well. You're picking jurors. Well, I guess what I'm trying to say, Your Honor, is that we can't really blame fault of juror for being aware of what happens in our society. And if profiling is improper and it does happen in society as a defendant's reality. Wait, that's not the issue. The issue is whether you want to bump her because you think she may have an animus against your client or whether you want to bump her just because she's black and you think blacks would have an animus against your client. And her comments make that a very serious question for her. Ordinarily, getting stopped by the police for speeding isn't a big deal. You just get your ticket, you mail in the check, and you don't even remember anything about it. So the reference to several other. Did other jurors have experiences like what she said her son had where they felt like the police were hassling him on account of his race? I don't. Candidly, I don't recall that. That's really at the core of the comparative analysis, saying that there were white jurors with the same thing. What's our standard of review of Judge Pearsall's conclusion at the third step that the reason is pretextual? The standard of review is clear error on prongs one and three and de novo on prong two. Prong two is the party making a peremptory challenge must offer a race-neutral reason. Right. And that's not really at stake here because they did offer a race-neutral reason. In other words, if they'd gotten up and said our race-neutral reason is that her skin is lighter than the other guys, we would say that fails at step two. Step three we review for clear error. Is clear error. And we're at step three is what's at issue here, is it not? Yes. And let me ask you another question about the inconsistent verdicts. Sure, Your Honor. The counsel says that the questions to two and ten are inconsistent. Do you agree with that? Question two, is there an unlawful and unreasonable seizure? They say no. Question ten, did they conspire to assault and false imprisonment? They say yes. He says false imprisonment and seizure are the same thing in California. No, as a matter of fact, my thought as I was listening to this argument was similar to the court's questions, and that is one can the jury could reasonably conclude that, yes, if the counsel did believe that there was, that the license and registration should have been forthcoming immediately and he didn't give it, okay, we're going to stop him for alleged thieving, maybe arrest him for not giving the documents, but then it went awry. And the jury could easily conclude that the excessive force. No, I didn't ask you about the excessive force. I asked you about the yes for false imprisonment on question ten. Well, the false imprisonment, as the court's questions indicated, could be the imprisonment far longer than necessary on charges that were trumped up. One thing to keep in mind is that, actually, Mr. Perron was never charged with not giving up the license and registration. The prosecutor prosecuted him on the basis of the police reports for a battery on a police officer and. . . So what does that prove? They don't have to charge every minor thing. They can charge a more serious crime if they want. That's true. But the conclusion, because the jury was entitled to conclude that the reports and the testimony of their officers was. . . So the jury could have concluded that he was properly seized for failing to give his license but not properly imprisoned because he was in prison for another charge that they may have concluded. Right. The seizure can extend far longer than necessary and the part that's unnecessary can be a false imprisonment. I've got two questions. One I think is pretty easy. I just need to know a yes or no. The question is, do the questions in the complaint that were sent to the jury match up to counts of the complaint? Did the questions. . . In other words, are there 13 counts in the complaint or 12 counts in the complaint? Some of the counts in the complaint were withdrawn. Okay. So are these special verdicts or are these general verdicts? I think they're general verdicts, Your Honor. The reason they're general is because the jury was instructed about the law and asked to apply that law to the facts. That's what we do in general verdicts. And the fact that there are several questions that met because there are several counts in the complaint doesn't change the fact that they're all general verdicts. Let me just. . . Let me stay on this for. . . I want to just switch you for a second because your time is fleeting and this is troubling to me in this case. We have two deputies here, Hoxmeyer and. . . I'm sorry, I remember the other one. And Goodrich. With respect to Hoxmeyer, what's the evidence of racial animus other than the race of your client? Well, he apparently talked to Mr. Goodrich and they formulated some plan together. And let's assume that they're awful people. They got together and they decided to do something terrible to your client and that the 1983 claims therefore should stand for excessive force. I'm trying to figure out what evidence there. . . And I know your client is African American. My question is what evidence is there of racial animus by the second policeman? I want to get to the other one in a second. Well, first of all. . . I think the answer in this record is none other than the race of your client. I think it has to be inferred by the fact of the false testimony. Why? Because. . . Why do we know. . . Well, I mean, that's one conclusion that you could draw, of course. Well, how can I draw the other one? What evidence in the record. . . Joe, what we're saying here is that they acted against your client, not simply because they were bad policemen or violated the Fourth Amendment. They did it out of a racial animus. And so with respect to Deputy Hoxmeyer, I can't find any evidence in this record other than the race of your client, which I think our cases say, the Manhattan Beach case says, is not enough to support the 1985 verdict. Is there anything else? Well, I think you have the racial predicate plus the false testimony, which gives an inference that. . . So you're saying that any time there's false testimony in a case that involves anybody, it would be racial? No, not anybody. Only African Americans? Well, if there's a difference in races, perhaps. Well, the inference that seems more obvious to me is cop number one has racial bias and tells a false story in order to get away with beating the guy up. Cop number two does not have racial bias, but he's part of the police force, so he backs up his partner. I think that's also fair. So now let's get to cop number one, because that's the interesting question for me, too. Assume Judge Kleinfeld's right. What's the evidence of racial bias as to Officer Goodrich, who we call cop number one? Other than Mr. Rodriguez's testimony, what's the evidence of racial bias? Well, I think, again, we have, first of all, there's a difference in races as well. There is the false testimony, which, according to the case law, can create an inference that there is a racial bias. The testimony can create an inference of civil rights violation, of 1983 violation, but it doesn't create an inference of racial bias, does it? I think it can if the testimony, if the testimony, as I recall the case law, and this is cited in the briefs, and please forgive me for not knowing the case name, that if the testimony is obviously manufactured or fabricated, and you have what I would call the racial predicate, that there is a distinction. And the victim is? The victim is of a different race. Therefore, there's at least an inference that there's some racial motivation. I see I have seven seconds left. Do you want to answer any questions that the Court might have? But I don't want to run over. Thank you, Mr. Stevens. Okay. Thank you, Your Honor. Thank you. We're back. Very brief points. Excuse me. Who are you? You're a stranger. Sorry. Chris Lockwood. I wrote the brief. Okay. We don't know you. Sorry. You can introduce yourself. Chris Lockwood for the defendants. Thank you, Mr. Lockwood. A few very brief points. On the malicious prosecution claim, I think it's important to note that Mr. Martin also supported the criminal prosecution. We cited several places where he expressed he said that there was, that the plaintiff struck the deputies. Well, it's not what he said. He said they spun him around, and when they spun him around, his elbow may have brushed against one of the deputies. Well, it was hidden. He's a specific. We have to take his testimony in the light most favorable to the plaintiff. He never testified that the deputies were assaulted. I agree with that part. But he did say they struck the car door and also spinning around. It's there. So you think it's beyond a reasonable doubt standard for the defendants? No. I mean, really. State has probable cause to prosecute, and that establishes probable cause. Probably the more important issue, though, is under federal law, distinguished from state law, you have to have not just the state law elements but also equal protection violation. And we're back to the question, where's the racial animus here? Well, the Rodriguez thing is really strong. If that properly came in, it looks as though this innocent man was harassed on a plainly false charge based on a stereotype about Hispanic Americans. Well, you look at the actual testimony of Rodriguez, and it is purely a feeling question. Quote, when Officer Goodrich approached you at that particular time and said what he did, did you feel you would be singled out because of your race? No, no, it's not that. It's that the cop busts him for playing music too loud through these rumbly big bass speakers, I guess, but it turns out he's just got to rent a car with a stock low-priced music system. Where's the evidence that that's racial? The evidence would be that it's a racial stereotype. There's no evidence of that other than Mr. Rodriguez's feeling, and that's all that's in there. That's page 83 and 84 of the record. There's no evidence that race is factored into this. What's completely missing? In fact, there are expressive missions that it's missing. There's no racial epithets, anything like that. There's no evidence of anybody of a different race treated differently. The fact that they are a race is not enough. Do you agree with your co-counsel that, since you're tag-teaming us, that even if we knocked out the 1985 verdicts, if the 1983 verdicts remained, the damages would be precisely the same? Part of the 1983 verdict is malicious prosecution. That's most of the damages. No. Part of the 1983 verdict is malicious prosecution. That's actually most of the damages. I'm sorry. If the 1983 verdicts remained, but the 1985 verdicts were knocked out, we would have precisely the same damages, yes? If you do just the 1985 verdicts. Yeah, that's the question I'm asking. Agreed. Yes? Yeah. Okay. But if you knock out the malicious prosecution, then you knock out almost everything.  Okay, Mr. Lockwood, you're well over the time, so thank you very much. I got it. Gentlemen, thank you. The case just argued is submitted and will stand in recess for today. Thank you.
judges: Kleinfeld, Silverman, Hurwitz